UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TINDALL CORPORATION,

                              Plaintiff,

           v.

BERKLEY ASSURANCE COMPANY,

                              Defendant.

**COMPLAINT**

Civil Action No.

Plaintiff TINDALL CORPORATION, by and through its attorneys, BOND,

SCHOENECK & KING, PLLC and MILONE LAW FIRM PLLC, as and for its Complaint

against the defendant BERKLEY ASSURANCE COMPANY, alleges as follows:

## NATURE OF ACTION

1.      This is an action seeking damages for breach of an insurance contract and

declaratory relief arising out of defendant Berkley Assurance Company's failure to honor the terms

of a Contractor's Professional Policy revolving around a claim for coverage arising from a

construction project undertaken by plaintiff Tindall Corporation at the Samuel S. Baxter Water

Treatment Plant in Philadelphia, Pennsylvania during the fall of 2019.

## THE PARTIES

2.      At all relevant times, plaintiff Tindall Corporation ("Tindall") was and is a South

Carolina corporation with its principal places of business located at a property that is identified by

both of the addresses, 3076 North Blackstock Road, Spartanburg, South Carolina 29301, and 2273

Hayne Street, Spartanburg, South Carolina 29301.

3.      At all relevant times, defendant Berkley Assurance Company ("Berkley") was and is an insurance company that is organized pursuant to the laws of Iowa with a principal place of business located at 11201 Douglas Avenue, Urbandale, Iowa 50322.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the dispute is between citizens of different states.

5.      Venue is proper in this Court pursuant to a valid forum selection clause, as set forth below.

## FACTUAL BACKGROUND

**A.  The Policy**

6.      Tindall is an industry leader in the design, manufacture, and construction of precast concrete structures, with locations in Virginia, Georgia, Mississippi, and Texas.

7.      On or about October 1, 2019, for good and valuable consideration, Tindall purchased from Berkley a claims-made and reported Contractor's Professional Policy bearing policy number PCAB-5009786-1019 for the policy period of October 1, 2019 through October 1, 2020 (the "Policy").  A true and correct copy of the Policy is attached as **Exhibit A**.

8.      The Policy provides in relevant part that Berkley "will defend [Tindall] against any **Professional Claim** ... and pay on your behalf all **Damages** and **Claim Expense** for that **Professional Claim** in excess of any appliable Self-Insured Retention, provided that: 1) the **Professional Claim** arises out of an actual or alleged negligent act, error or omission in the rendering of or failure to render **Professional Services** by you, or by a **Responsible Entity** for whom you are legally responsible, on or after the **Retroactive Date** and before the end of the **Policy Period**; 2) the Professional Claim is first made against you during the **Policy Period** ... and

2

reported in writing by you to us during one of those periods ...; and 3) prior to the effective date of the first policy insuring this type of **Professional Claim** issued to you, and continuously renewed by us, the **Principal Personnel** had no knowledge of circumstances which could give rise to a **Professional Claim**." *See* Exhibit A, pp. 26-27 (pp. 1-2 of 19).

9.     The Policy further provides, in relevant part, that Berkley agrees "to pay [Tindall Corporation] or on your behalf for **Mitigation Cost** in excess of any applicable Self-Insured Retention to mitigate or avoid a **Professional Claim** ... that would be covered under this Policy, provided that: 1. the services or other activities you seek to mitigate or rectify were rendered or performed on or after the **Retroactive Date** and before the end of the **Policy Period**; and 2. the circumstances that would reasonably be expected to lead to such **Claim** are first reported in writing by you to us during the **Policy Period**; and 3. prior to the effective date of the first policy insuring such type of potential **Claim** issued to you, and continuously renewed by us, the **Principal Personnel** had no knowledge of circumstances that could give rise to a **Claim**; and 4. before incurring any **Mitigation Cost**, you demonstrate to us the reasonableness and necessity of the proposed cost in light of the projected benefit in terms of mitigating or avoiding a covered **Claim**, and we provide our express written consent for such **Mitigation Cost**, such consent not to be unreasonably withheld." *See* Exhibit A, pp. 27-28 (pp. 2-3 of 19).

10.     The Policy contains a choice of law provision mandating application of the law and practice of the State of New York.  *See* Exhibit A, p. 44 (p. 19 of 19).

11.     The Policy also contains a jurisdiction and venue provision requiring "questions related to the validity, interpretation, performance, and enforcement of this Policy, and all forms of contractual, tort and statutory claims" to be exclusively submitted "to the jurisdiction of any court (State or Federal) in New York."  *See Id.*

B.  **Claim Arising From Construction Project At Samuel S. Baxter Water Treatment Plant**

12.     In March of 2017 and December of 2018, Tindall entered into contracts with D. J. Keating Construction Company ("Keating") and Design Distribution America ("DDA"), respectively, to design, manufacture, deliver, and install precast concrete to form a 175,000 square foot concrete superstructure for the roof of the Clearwell Basin located at the Samuel S. Baxter Water Treatment Plant in Philadelphia, Pennsylvania (the "Project").

13.     In these contracts, Tindall specifically agreed, among other things, to perform in the role of "Specialty Structural Engineer … for [Tindall's] portion of the work" and had responsibility for designing the "members and connections" in accordance with the Project specifications and erection drawings.

14.     Tindall thereafter designed and engineered the precast concrete members, ultimately delivering same to the Project location in or around September of 2019.

15.     After erection of the precast members began on the Project, an onsite inspector determined that one of the precast concrete members - specifically, one of the double tees that form the roof structure - did not meet the Project's durability specifications and drawings which required them to have 1 ½" of concrete cover over the steel reinforcement at the end of the double tees.

16.     As a result of this discovery, the Philadelphia Water Department issued to Keating a Non-Conformance Report demanding that this engineering/design error be corrected on each non-conforming double tee supplied by Tindall on the Project.

17.     Upon further testing and inspection, it was revealed that this engineering error and design defect extended to every precast double tee furnished by Tindall on the Project.

18.     Subsequently, on October 14, 2019, Keating demanded that Tindall pay for the costs and/or work associated with correcting the non-conforming double tees.

19.     To minimize its exposure and avoid a potentially much larger loss, Tindall undertook a detailed investigation of various methods for correcting the engineering/design error discovered in the non-conforming double tees.

20.     Following this investigation, it was determined that Tindall could correct the engineering/design error by applying an elastomeric coating to the last four feet of every double tee stem, coupled with grouting the joints at the ends of the stems.

21.     The cost to correct the engineering/design error relative to the non-conforming double tees was estimated to be approximately $1.5 million.

22.     Tindall's insurance broker provided Berkley with notice of the loss on or about April 7, 2020.

23.     Berkley at no point objected to Tindall's plans to correct the engineering/design error relative to the non-conforming double tees and, in fact, did not respond to Tindall's April 7, 2020 claim notice until over two months later.

24.     By correspondence dated June 16, 2020, Berkley declined coverage for the costs associated with correcting the engineering/design error in the non-conforming double tees.

25.     Berkley then sent a second declination letter dated July 17, 2020, which reiterated the June 16, 2020 declination letter in all material respects.

26.     On October 28, 2020, Tindall requested that Berkley reconsider its declination of coverage on the grounds that Berkley's declination of coverage was unfounded and based on a misreading of the Policy language.

27.     The parties, through their counsel, exchanged further communications regarding Tindall's request that Berkley reconsider its declination of coverage.

28.     Ultimately, however, Berkley advised Tindall that it was standing by its original declination of coverage by correspondence dated March 31, 2022.

29.     To date, Berkley has declined and/or refused to provide coverage for the costs associated with correcting the engineering/design error in the non-conforming double tees.

30.     To mitigate its damages arising from the engineering/design error relative to the non-conforming double tees, and due to time deadlines associated with the Project, Tindall proceeded forward with correcting the non-conforming double tees and has incurred extensive costs associated with same.

31.     Tindall has complied with all the terms, conditions and requirements set forth in the Policy.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

32.     Tindall repeats and realleges paragraphs 1 through 31 as if fully set forth herein.

33.     Berkley entered into a contract of insurance with Tindall in the form of the Policy.

34.     The Policy requires Berkley to pay Tindall for Damages and/or Mitigations Costs stemming from a Professional Claim arising out of an actual or alleged negligent act, error, or omission in the rendering of or failure to render Professional Services by Tindall on or after the Retroactive Date and before the end of the Policy Period.

35.     Such Damages and/or Mitigation Costs include the costs Tindall incurred correcting the engineering/design error relative to the non-conforming double tees.

36.     Berkley breached the terms of the Policy by refusing to cover the Damages and/or Mitigation Costs Tindall incurred correcting the engineering/design error relative to the non-conforming double tees.

37.     Berkley's breach of its duty to pay Damages and/or Mitigation Costs has resulted in considerable financial harm to Tindall, including Tindall itself having to fund payment of the Damages and/or Mitigation Costs related to correcting the engineering/design error in the non-conforming double tees.

38.     By reason of the foregoing, Berkley has breached the Policy and Tindall is entitled to damages in an amount to be determined at trial, plus interest as allowed by law.

<u>**SECOND CAUSE OF ACTION**</u>
**(Declaratory Judgment)**

39.     Tindall repeats and realleges paragraphs 1 through 38 as if fully set forth herein.

40.     Tindall has suffered, and continues to suffer, damages stemming from its payment of Damages and/or Mitigation Costs arising from correcting the engineering/design error relative to the non-conforming double tees.

41.     Tindall's April 7, 2020 claim notice was made within the period provided for in the Policy for a Professional Claim and/or Mitigation Costs, Tindall submitted the claim for Damages and/or Mitigation Costs during the Policy Period, and such claim for Damages and/or Mitigation Costs falls within the coverage provided by the Policy.

42.     Berkley's declination of coverage for the Damages and/or Mitigation Costs Tindall has incurred arising from correcting the engineering/design error relative to the non-conforming double tees is unjustified and wrongful.

43.     By reason of the foregoing, Tindall is entitled to a declaratory relief specifying that:

7

    a.   Berkley is obligated to pay Tindall for any and all Damages and/or Mitigation Costs it has and/or continues to incur as a result of correcting the engineering/design error relative to the non-conforming double tees on the Project; and

    b.   Berkley breached its duty under the Policy to pay Damages and/or Mitigation Costs to Tindall arising from correcting the engineering/design error relative to the non-conforming double tees on the Project.

**WHEREFORE**, Tindall Corporation demands judgment as follows:

a.   Damages in the amount of the costs Tindall has incurred as a result of correcting the engineering/design error relative to the non-conforming double tees, plus interest as allowed by law;

b.   A declaration that Berkley is obligated to pay Tindall for any and all Damages and/or Mitigation Costs it has and/or continues to incur as a result of correcting the engineering/design error relative to the non-conforming double tees on the Project;

c.   A declaration that Berkley breached its duty under the Policy to pay Damages and/or Mitigation Costs to Tindall arising from correcting the engineering/design error relative to the non-conforming double tees on the Project; and

d.   All other relief the Court deems just and proper, including an award of reasonable attorneys' fees and costs incurred in this action.

## <u>JURY DEMAND</u>

Tindall demands a trial by jury of all issues so triable pursuant to Federal Rule of Civil Procedure Rule 38.

DATED:      Buffalo, New York
            September 30, 2022

                              By: */s/ Stephen A. Sharkey* _____

                              BOND, SCHOENECK & KING, PLLC
                              Stephen A. Sharkey, Esq.
                              Kevin G. Cope, Esq.
                              *Attorneys for Plaintiff, Tindall Corporation*
                              Avant Building, Suite 900
                              200 Delaware Avenue
                              Buffalo, New York 14202
                              (716) 416-7000


                              MILONE LAW FIRM PLLC
                              Richard D. Milone, Esq.
                              The Willard Office Building
                              1455 Pennsylvania Avenue, NW
                              Washington, DC 20004
                              *Pending pro hac vice admission*